IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 6, 2013

## MICHAEL COLLINS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-05911      Chris Craft, Judge**

---

**No. W2012-01201-CCA-R3-PC  - Filed April 12, 2013**

---

Petitioner, Michael Collins, appeals the Shelby County Criminal Court's denial of post-conviction relief from his guilty-pleaded conviction for second degree murder and the resulting thirty-year sentence.  On appeal, he contends that his guilty plea was not knowing and voluntary because of the ineffectiveness of counsel.  Following our review of the record, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

James DeRossitt, Memphis, Tennessee, for the appellant, Michael Collins.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Marianne Bell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Facts and Procedural History

A Shelby County grand jury indicted petitioner for first degree murder, and he entered a guilty plea to the lesser-included offense of second degree murder in exchange for a thirty-year sentence in the Tennessee Department of Correction.  The State offered the following as the factual basis for the plea:

> [O]n January 12th, 2008, at approximately 10:15 A.M.[,] Carl Crutcher was standing in front of 1575 Miller when he was shot and killed.  The Shelby

County Medical Examiner's Office ruled [the victim]'s death a homicide as a result from a gunshot.

A witness on the scene heard gunshots and observed a male known as Michael run from the area where [the victim]'s body was found. The witness observed Michael get into a white Cadillac and flee the scene. During the course of the investigation[,] [petitioner] was developed as a suspect.

[Petitioner] turned himself into the police and was arrested and transported to the CJC. [Petitioner] was interviewed and gave a typed statement of admission as to the shooting.

During the guilty plea submission hearing, petitioner acknowledged that he understood his constitutional rights and was pleading guilty of his "own free will without any coercion or duress." He stated that he was not guilty but was pleading guilty because it was in his best interest. The trial court found that petitioner "made a knowing, intelligent[,] and voluntary decision to plead guilty and to waive his rights to trial by jury."

Petitioner filed a pro se petition for post-conviction relief on April 21, 2011. The post-conviction court appointed counsel, who filed an amended petition for post-conviction relief on August 22, 2011. The post-conviction court held an evidentiary hearing and subsequently denied relief.

## II. Evidentiary Hearing

Petitioner testified that at the time of the shooting, he was living with his mother on Miller Street and was drawing disability benefits. He said that he had a learning disability that caused him to process information slowly. According to petitioner, the victim continually harassed him and his family because petitioner's family was from North Memphis. On January 12, 2008, petitioner was awakened by his dog's barking. He testified that he saw the victim trying to take the dog from the yard. Petitioner went outside and confronted the victim. They began fighting, and a gun dropped from the victim's pocket. They both reached for the gun, but petitioner grabbed it first. The victim backed away and began to run. According to petitioner, the gun discharged as he stood up. He did not know until later that the victim had been shot. Petitioner's parents turned him in to the police.

Petitioner testified that trial counsel was appointed to represent him. He said that she gave him a copy of the discovery materials, and they reviewed them. Petitioner recalled her reading his options to him regarding whether to plead guilty or go to trial. He said that he told her about the victim's harassment of him and his family. According to petitioner, he and

trial counsel did not "get[] along." He thought that her case load was too heavy for her to become familiar with his case, and he believed that she talked with the victim's family when she intended to talk to his family because she did not know the difference. Petitioner stated that the jail employees destroyed his copy of the discovery materials after they were damaged by water, and trial counsel failed to give him another copy. He also stated that trial counsel never gave him the transcript of the preliminary hearing or any information about the victim's criminal background. Petitioner testified that he decided to plead guilty because he believed he would lose his trial based on trial counsel's representation.

Petitioner recalled that on the day of his trial, trial counsel spoke to his mother on the telephone and explained to her that the State was offering petitioner a thirty-year sentence for second degree murder and that he faced life in prison if he did not take the offer. Petitioner subsequently spoke to his mother, and she was crying. Petitioner said that he "got confused." He did not know what to do but decided to take the State's offer.

On cross-examination, petitioner admitted that he gave a statement to police after his arrest in which he told them that he and the victim had fought over a gun, but he got to the gun first. Petitioner agreed that he was originally charged with committing second degree murder, but he was re-indicted for first degree murder, which upset him because he never understood why he was re-indicted. He further said that he asked trial counsel to negotiate with the State for a plea offer for second degree murder, but trial counsel told him that he would not get an offer because it was a "No Deals situation."

Petitioner's mother, Charlene Collins, testified that her family began to have problems with the victim on the day they moved to Miller Street. She did not witness the shooting but learned about it later. Ms. Collins said that trial counsel never interviewed her about petitioner's case. She left nine to ten telephone messages for trial counsel, but trial counsel never called her back. On petitioner's trial date, Ms. Collins talked to trial counsel on the telephone. Trial counsel told her about the State's offer and said that petitioner faced a life sentence if he did not accept the offer. When Ms. Collins talked to petitioner, who also told her about the State's offer, she "just blanked out and fell on the floor." Ms. Collins said that she pressured petitioner to plead guilty because trial counsel "made" her.

Petitioner's sister and stepfather also testified about the harassment from the victim and other neighbors. They both said that they tried numerous times to contact trial counsel but were unsuccessful.

The State called trial counsel as a witness. Trial counsel testified that she had worked for the District Public Defender's Office for twelve years prior to the hearing. She was assigned to petitioner's case after he was re-indicted for first degree murder. Trial counsel

testified that she learned the State sought to re-indict petitioner after several witnesses came forward with information about the shooting. One witness reported that the night before the killing, petitioner "said he was going to kill someone," and another witness said that petitioner shot the victim "in cold blood while [the victim] was begging for his life . . . ." Trial counsel shared those witnesses' statements with petitioner. She recalled giving petitioner three copies of discovery. Because of his learning disability, she read every page of the discovery material to him, and she believed that he understood what she read to him.

Trial counsel stated that petitioner's prior attorney, who had represented him for the original second degree murder case, had initiated a mental evaluation for petitioner. Based on his mental evaluation, petitioner was required to attend "competency school." Subsequently, the court held a hearing on petitioner's competency and found that he was competent. Trial counsel testified that she was not satisfied with that ruling, so she obtained funds from the court to hire another expert for a second evaluation. Her expert found that petitioner was malingering, so trial counsel did not present his report to the court. Trial counsel recalled that petitioner seemed to have difficulty discussing the facts of his case with the expert, which surprised her because petitioner never had difficulty discussing the facts with her.

Trial counsel testified that she met with petitioner on each of his court dates and four to five times outside of court. She said that she listened to him and asked him questions. She recalled specifically asking him why the witnesses against him would make up their stories. Trial counsel said that she and her investigator visited the crime scene "to get a feel for the neighborhood" and to determine whether one of the witnesses could have heard what she said she did. She and her investigator tried to speak with all of the witnesses, but many of them would not cooperate. Trial counsel testified that petitioner's stepfather was supposed to visit the investigator at her office; however, he failed to come, and they were unable to reach him by telephone. She further testified that petitioner's mother would not let her speak with petitioner's younger brother despite the fact that he might have witnessed the shooting. Trial counsel spoke with petitioner's family during court appearances. The family told her "that there were various incidents" but, despite her request, did not give her specific dates so that she could further research the incidents. Because she did not have any specific dates, she searched the Central Records database for incidents involving petitioner's family and address. She discovered four incident reports, but none of the reports mentioned the victim.

Trial counsel testified that petitioner continually asked her "if he could plead to second degree murder." She talked to the State about a plea offer, but they were unwilling to negotiate. She explained that the district attorney's office in Shelby County had designated first degree murder cases as "No Deals" cases, meaning that they would not negotiate about lessening the charge. Trial counsel recalled explaining to petitioner and to

his mother that the State would not make an offer for him to plead to second degree murder. She said that prior to his trial date, petitioner told her that he would take a twenty-five-year sentence in exchange for pleading guilty to second degree murder. When she presented the twenty-five-year sentence proposal to the State, the State countered with an offer for a thirty-year sentence for second degree murder. She, in turn, presented the State's offer to petitioner and told him that he faced a life sentence if he went to trial instead of taking the offer. Petitioner wanted to speak with his mother about the offer. Trial counsel arranged to have a telephone brought to the holding area. At petitioner's request, trial counsel called his mother and explained the State's offer to her. According to trial counsel, petitioner's mother "said calmly that she wanted him to take" the offer. Trial counsel did not recall her crying or "fall[ing] out." Trial counsel said that she did not want to relay to petitioner what his mother said, so she asked his mother to tell him herself. Petitioner spoke to his mother and then asked for the plea agreement papers. Trial counsel characterized petitioner as "resigned" at that point. She "handed him the papers and went over his rights, and he signed the papers." Trial counsel said that petitioner indicated to the trial court that he understood his rights and was satisfied with her representation. Trial counsel recalled that, after his guilty plea hearing, petitioner thanked her for getting him the offer. She also recalled that his mother thanked her.

On cross-examination, trial counsel acknowledged that petitioner's sentenced was out-of-range, and she testified that she explained to petitioner that if he had received a second degree murder conviction at trial, he would have been sentenced within his range. Trial counsel said that she had concerns about petitioner's mental competency "based on [her] interactions with him," and "his mother had told [her] he was slow." She testified, "I was trying to do everything to make sure that he understood what was going on and that I had done everything to make sure, that I could, that he understood what was going on." On re-direction examination, trial counsel said that she would not have let petitioner enter the guilty plea if she thought that he did not understand the plea.

## III. Analysis

On appeal, petitioner claims that he received ineffective assistance of counsel. He contends that trial counsel's performance was deficient when she allegedly failed to investigate the history of violence between his family and the victim and allegedly coerced him into pleading guilty. Petitioner further claims that trial counsel's deficient performance rendered his guilty plea involuntary.

A. Ineffective Assistance of Counsel

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)), *perm. app. denied* (Tenn. Feb 16, 2012). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is *de novo* with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citations omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing

professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)). Moreover, when a petitioner's claims that ineffective assistance of counsel contributed to his entering a guilty plea that was not voluntary, the Supreme Court has required a petitioner to demonstrate a reasonable probability that but for counsel's ineffectiveness, he would not have entered the guilty plea and would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Accordingly, in this case, petitioner must demonstrate that trial counsel's representation was deficient, and that but for counsel's mistakes, he would not have entered the guilty plea. *Veldora L. Trout v. State*, No. W2000-00857-CCA-R3-PC, 2001 WL 359238, at *2 (Tenn. Crim. App. Apr. 9, 2001).

In this case, the post-conviction court credited trial counsel's testimony over petitioner's and over petitioner's witnesses. Trial counsel testified that she was concerned about petitioner's mental competency, so she did everything she could to ensure his understanding of the proceedings against him, including obtaining a second mental evaluation and reading every page of the discovery material to him. She further testified that petitioner's family had mentioned the history of violence in their neighborhood, but they

never gave her enough information for her to develop proof on the subject. In fact, she researched the police records using the information that was available to her and could not find an incident report that involved both petitioner's family and the victim. Trial counsel cannot be faulted for investigating as much as she was able without the cooperation of petitioner's family. As for her allegedly coercing petitioner, the proof at the post-conviction hearing evinced that petitioner asked trial counsel to negotiate with the State for a plea agreement for second degree murder. Trial counsel succeeded, despite the fact that the State had labeled his case as a "No Deals" case, and both petitioner and his mother thanked her for obtaining the plea agreement. Furthermore, petitioner testified at the trial court that he was entering his guilty plea without coercion. "A [p]etitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). In this case, the post-conviction court credited petitioner's testimony during the guilty plea hearing over his testimony at the post-conviction hearing. Petitioner has failed to show that trial counsel's performance was deficient.

### B. Voluntariness of Guilty Plea

It is axiomatic that a guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n. 5).

Petitioner's claim that his guilty plea was involuntary is based solely on the instances of ineffective assistance of counsel enumerated above. Having determined that his claims of ineffective assistance of counsel are meritless, we reject his challenge to the voluntariness of his guilty plea based on the same grounds. In sum,

> [t]he evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of "Buyer's Remorse," in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002).

**CONCLUSION**

After a thorough review of the record, the parties' briefs, and the applicable case law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE